IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GER LOR,<br><br>　　　　　Petitioner,<br><br>vs.<br><br>LARRY SMALL,[1] Warden (A), Calipatria State Prison,<br><br>　　　　　Respondent. | No. 2:08-cv-01277-JWS<br><br>MEMORANDUM DECISION |

Petitioner Ger Lor, a state prisoner appearing *pro se*, has filed a petition for habeas corpus relief under 28 U.S.C. § 2254. Lor is presently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the Calipatria State Prison. Respondent has answered, and Lor has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

Following a trial by jury, Lor was convicted in the Sacramento County Superior Court of attempted murder (Cal. Penal Code §§ 187(a), 664), and discharging a firearm from a moving vehicle (Cal. Penal Code § 246). The jury also found that Lor had personally discharged a firearm, causing great bodily injury during the commission of the offenses (Cal. Penal Code § 122022.53(d)) and that the offenses were committed for the benefit of and in association with a criminal street gang (Cal. Penal Code § 186.22(b)(1)). The trial court sentenced Lor to an aggregate indeterminate prison term of 40 years to life and ordered him to pay the costs of his

---

[1] Larry Small, Warden (A), Calipatria State Prison, is substituted for John Dovey, Director of Corrections. Fed. R. Civ. P. 25(d).

public defender. Lor timely appealed his conviction and sentence to the California Court of Appeal, Third District. In an unpublished reasoned decision,[2] the Court of Appeal affirmed his conviction and sentence, but remanded the case to the trial court for a hearing on Lor's ability to pay his attorney's fees. The California Supreme Court summarily denied review without opinion or citation to in a "postcard denial" on June 13, 2007. Lor timely filed his petition in this court on May 26, 2008, and an amended petition on December 3, 2008.

## II.  GROUNDS RAISED/DEFENSES

In his amended petition Lor raises two grounds for relief:  (1) insufficiency of the evidence to support the street gang enhancements (Cal. Penal Code § 186.22(b)(1)), and (2) the trial court lacked authorization to order him to pay for his public defender.  Respondent asserts no affirmative defense.[3]

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[4]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the

---

[2] *People v. Lor*, 2007 WL 915089 (Cal. App. March 28, 2007), *review denied*.

[3] *See* Rules—Section 2254 Cases, Rule 5(b).

[4] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

time of the relevant state-court decision."[5] The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[6] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[7] When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[8] The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[9] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[10] In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial

---

[5] *Williams*, 529 U.S. at 412.

[6] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[8] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[9] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[10] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

and injurious effect or influence in determining the outcome.[11] Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[12]

In applying this standard, this court reviews the last reasoned decision by the state court,[13] which in this case was that of the California Court of Appeal. Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[14] This presumption applies to state trial courts and appellate courts alike.[15]

## IV. DISCUSSION

Ground 1: Sufficiency of the Evidence: Gang Enhancement.

California Penal Code § 186.22(b)(1) provides that a gang enhancement applies if the underlying felony was "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further or assist in any criminal conduct by gang members." Lor contends that the evidence does not support a finding that he committed the crime for either the "benefit of, at the direction of, or in association with" or with

---

[11] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[12] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[13] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[14] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[15] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

the "specific intent" elements of § 186.22.[16] The California Court of Appeal summarized the facts underlying the conviction:

> On the afternoon of July 9, 2005, [Lor] shot and seriously wounded Johnny Her in North Sacramento while both were driving their cars.
> Both testified at trial and denied gang membership.FN1 However, the People sought to show that [Lor] belonged to the Hmong Nation Society (HNS) and Her belonged to the rival Menace Boys Crips (MBC). Their evidence included (1) prior admissions by both and (2) a videotape of a brawl at the October 2004 Hmong New Year's Festival in Oroville, in which [Lor] and others were seen beating Her's brother "U-Bone," a known MBC member, and then Her. As to [Lor], the People also showed that after his arrest a backpack bearing HNS-related graffiti was found in his bedroom, his cell phone revealed calls made just after the shooting to validated HNS members, and the cell phone's address book contained the numbers of still other HNS members.
>
>> FN1. [Lor] also denied shooting Her. According to [Lor], someone had borrowed his car that afternoon.
>
> In addition, the People presented testimony from Sacramento Police Detective Aaron Lee, an expert in Asian street gangs. Lee testified that such gangs align according to nationality. HNS (Hmong Nation Society or Hmong North Side) is the dominant Asian gang in North Sacramento, with around 52 validated members. HNS's activities include homicides, drive-by shootings, narcotics sales and possession, illegal gun possession, and vehicle theft. Based on his admissions and the backpack found in his bedroom, [Lor] was clearly a member.
> HNS's enemies include MBC, of which Her's brother "U-Bone" is a validated member; Her, a known MBC associate, has not been officially validated, but in Lee's opinion there are sufficient grounds to do so. The enmity between HNS and MBC has led to assaults and killings.
> According to Lee, in the gang culture respect, which is often achieved through fear, is highly valued. HNS is benefited [*sic*] whenever a member assaults or kills an MBC member, because it demonstrates HNS's ruthlessness and diminishes the respect due to MBC. Gang members will defend members of their families, and gangs will assault the families of members of rival gangs. In Lee's opinion, the shooting charged in this case was an assault on an MBC member by an HNS member and was done for the benefit of HNS.
> Lee also testified to two predicate offenses committed by HNS. On November 29, 2003, HNS members Jerry Lee and Toua Vang committed a drive-by shooting; their convictions included findings that gang allegations were true.

---

[16] These two prongs are considered separately. *See People v. Morales*, 5 Cal. Rptr. 3d 615, 632 (Cal. App. 2003).

On July 18, 2001, Yong Lor committed a drive-by shooting on members of another gang opposed to HNS; he was convicted of attempted murder and the jury found that the crime was committed for the benefit of HNS.[17]

Based upon this evidence, the California Court of Appeal rejected Lor's position, holding:

> [Lor] contends there is insufficient evidence to prove the gang enhancement. We disagree.
> In reviewing a claim of insufficiency of the evidence, we decide only whether, when viewed in the light most favorable to the judgment, the record discloses evidence that is reasonable, credible, and of solid value such that a rational jury could find the defendant guilty beyond a reasonable doubt. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)
> Section 186.22, subdivision (b)(1), provides that a defendant's sentence will be enhanced if he is convicted of a felony "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members[.]"
> The People may rely on expert opinions by police officers who specialize in street gang crime to establish the elements of the enhancement. (*People v. Gardeley* (1996) 14 Cal.4th 605, 617.) In particular, expert testimony may establish that a gang member's crime benefited [*sic*] the gang by promoting "respect" for it. (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1382-1385.)
> [Lor] now concedes that he shot the victim and that he is a member of HNS. He asserts, however, that the People failed to prove he acted for the benefit of HNS and with the intent to promote, further, or assist in criminal conduct by its members; on the contrary, he claims, the evidence shows only that he acted to serve his individual interests, specifically his wish to gain respect within HNS. This argument fails because [Lor] does not suggest any non-gang-related reason why he might have thought that shooting Her could gain him such respect.
> [Lor] cites Detective Lee's testimony that a gang member who shoots at a member of a rival gang "is going to gain that notoriety, that respect within the gang itself." But this motive, even if defendant possessed it, is not inconsistent with the intent to benefit the gang and to promote its criminal purposes. In light of Detective Lee's testimony, the jury could reasonably have concluded that [Lor] acted with both intents.[18]

---

[17] *Lor*, 2007 WL 915089 at *1-2.

[18] *Lor*, 2007 WL 915089 at *2.

As stated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[19] This court must, therefore, determine whether the California Court of Appeal unreasonably applied *Jackson*.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[20] Consequently, although the sufficiency of the evidence review by this court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law.[21] This court must also be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency review.[22]

The States possess primary authority for defining criminal law.[23] A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas

---

[19] *Jackson v. Washington*, 443 U.S. 307, 319 (1979) (emphasis in the original).

[20] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[21] *Jackson*, 443 U.S. at 324 n. 16.

[22] *Juan H. v. Allen*, 406 F.3d 1262, 1275 (9th Cir. 2005).

[23] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle*, 456 U.S. at 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

corpus."[24] This principle applied to federal habeas review of state convictions long before AEDPA.[25] A federal court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's interpretation of the law.[26] It does not matter that the state supreme court's statement of the law was dictum if it is perfectly clear and unambiguous.[27] A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.[28] This is especially true where the highest court in the state has denied review of the lower court's decision.[29]

In this case, the California Court of Appeal found sufficient evidence to support imposition of the gang enhancement under state law as the Court of Appeal construed state law, and the California Supreme Court denied review. Normally this would end the matter in Respondent's favor. In this case, however, the court's inquiry does not end there. This court must also consider the effect of two decisions by the Court of Appeals for the Ninth Circuit, by

---

[24] *Bradshaw v. Richey,* 546 U.S. 74, 76, (2005); *see also West v. AT & T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law. . . .").

[25] *See Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law").

[26] *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

[27] *Id.* at 76.

[28] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[29] *Id.*; *see also West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 419 F.3d 1083, 1087 (9th Cir. 2005) (same).

which this court is normally bound,[30] construing California Penal Code § 186.22(b)(1): *Briceno v. Scribner*[31] and *Garcia v. Carey*.[32]

In *Garcia*, as in this case, the California Court of Appeal affirmed Garcia's conviction in an unpublished reasoned decision, and the California Supreme Court summarily denied review in a "postcard denial."[33] As framed by the Ninth Circuit, the issue presented and decided was whether the evidence supported the jury's finding of the required "specific intent to 'promote, further assist in' other criminal activity of the gang apart from the robbery of conviction."[34] After reviewing the evidence, the Ninth Circuit found:

> There is nothing in this record, however, that would support an inference that Garcia robbed Bojorquez with the specific intent to facilitate other criminal conduct by the E.M.F. The evidence indicates that Garcia was a gang member and that he robbed Bojorquez in an area known to be in the heart of the gang's "turf." Detective Hernandez, the gang expert, testified that the gang was "turf oriented," and he described three other robberies committed by E.M.F. members in El Monte during the few months prior to Garcia's offense.[FN6] But there is no evidence indicating that this robbery was committed with the specific purpose of furthering other gang criminal activity, and there is nothing inherent in the robbery that would indicate that it furthers some other crime. There is nothing on the record that connects the "turf-oriented" nature of the gang with the commission of robberies generally, or, more importantly, with the commission of this robbery in particular. There is no testimony that protection of turf enables any other kind of criminal activity of the gang. The expert's testimony is singularly silent on what criminal activity of the gang was furthered or intended to be furthered by the robbery of Bojorquez.[35]

---

[30] *See Miller v. Gammie*, 335 F.3d 889, 893, 899 (9th Cir. 2003) (en banc).

[31] 555 F.3d 1069 (9th Cir. 2009).

[32] 395 F.3d 1099 (9th Cir. 2007).

[33] *Garcia*, 395 F.3d at 1103 n.7.

[34] *Id.* at 1100-01.

[35] *Id.* at 1103.

> FN6. These robberies helped to qualify El Monte Flores as a "criminal street gang," *see* CAL. PENAL CODE § 186.22(f), that was engaged in a "pattern of criminal activity," *see id.* § 186.22(e).

The Ninth Circuit determined that, because of this lack of evidentiary support for the specific intent to further other gang criminal activity element, the decision of the California Court of Appeal was an unreasonable application of *Jackson*.[36] Lor argues that *Garcia* entitles him to relief. The court agrees that, if analysis of *Garcia* stopped at that point, it would strongly support Lor's position, if not compel this court to grant him relief. Unfortunately for Lor, however, analysis of *Garcia* cannot stop at that point. The Ninth Circuit panel went on to state:

> A decision of the California Supreme Court upholding a gang enhancement provides an example of the kind of evidence that can support a finding of the requisite specific intent. In *People v. Gardeley,* 14 Cal.4th 605, 59 Cal.Rptr.2d 356, 927 P.2d 713 (1996), an expert testified that an assault of the type involved there "was a 'classic' example of gang-related activity"; the expert explained "that criminal street gangs rely on such violent assaults to frighten the residents of an area where the gang members sell drugs, thereby securing the gang's drug-dealing stronghold." *Id.* at 722. The California Supreme Court held that such testimony permitted the jury reasonably to conclude that the attack was committed with the necessary specific intent to further other criminal activity of the gang. *Id.* No comparable testimony was presented in Garcia's case.
> Other California cases also present examples of the kind of evidence permitting an inference of specific intent to further other criminal gang activity. *See, e.g., People v. Augborne,* 104 Cal.App.4th 362, 372-73, 128 Cal.Rptr.2d 258 (2002) (expert testified to belief that crimes were committed for promotion and assistance of criminal conduct by gang members); *In re Ramon T.,* 57 Cal.App.4th 201, 207-08, 66 Cal.Rptr.2d 816 (1997) (finding gang enhancement supported by expert evidence and unequivocal act where the attack against a police officer who had another gang member in custody was committed in order to assist the gang member's escape); *California v. Ortiz,* 57 Cal.App.4th 480, 484-85, 67 Cal.Rptr.2d 126 (1997) (finding sufficient evidence to support a gang

---

[36] *Id.* at 1104.

enhancement where expert evidence was that a robbery and murder were committed with the specific intent of framing a rival gang for the crimes).[37]

In *Briceno*, the Ninth Circuit reaffirmed its decision in *Garcia* despite the fact that two California Appellate Court decisions held that *Garcia* misinterpreted California law.

> In *Garcia,* the defendant, a known gang member, robbed the victim "in an area known to be in the heart of the gang's 'turf.'" 395 F.3d at 1103. Although a police expert testified that the defendant's gang was "turf-oriented," we held that there was insufficient evidence to warrant an enhanced sentence under § 186.22(b)(1) because there was no evidence, aside from the gang expert's generic testimony, "that would support an inference that Garcia robbed [the victim] with the specific intent to facilitate other criminal conduct by the [gang]." *Id.* Aside from evidence of Garcia's gang membership, the record was "singularly silent" as to "what criminal activity of the gang was . . . intended to be furthered by the robbery." *Id.* We concluded that this lack of evidence triggered application of the *Jackson* standard, as "[w]ithout this evidentiary link, it is unreasonable to conclude that a rational jury could find that Garcia committed [this robbery] with the specific intent to facilitate other gang crimes. There was simply a total failure of proof of the requisite specific intent." *Id.* at 1104.
> The State urges us to disregard *Garcia,* citing two California appellate court decisions holding that *Garcia* misinterpreted California law. *See People v. Hill,* 142 Cal.App.4th 770, 47 Cal.Rptr.3d 875, 877 (2006); *People v. Romero,* 140 Cal.App.4th 15, 43 Cal.Rptr.3d 862, 865 (2006). *Romero* and *Hill* both held that "the specific intent element is satisfied if [the defendant] had the specific intent to 'promote, further, or assist' [a fellow gang member] in [any criminal conduct]." *Romero,* 43 Cal.Rptr.3d at 866; *Hill,* 47 Cal.Rptr.3d at 877. The State argues that we are bound by this construction of the statute, under which the gang enhancements are warranted so long as Briceno intended to assist Landin in the commission of the crime and knew that Landin was a gang member.[38]

The *Briceno* court held that to the extent the California Supreme Court provided an authoritative interpretation of § 186.22(b) in *Gardeley*, it suggests that the California Supreme Court would not adopt the State's understanding of *Romero* and *Hill*. Respondent urges this court to disregard *Briceno* as inconsistent with the recent decision of the Supreme Court in

---

[37] *Id*.

[38] *Briceno*, 555 F.3d at 1079-80 (footnote omitted).

*Waddington v. Sarausad*.³⁹ Specifically, Respondent quotes *Sarausad*, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."⁴⁰ Unfortunately for the Respondent, this court may not do so. It may only disregard otherwise binding Ninth Circuit authority when there has been an *intervening* decision of a higher authority.⁴¹ Not only was *Briceno* decided the month after *Sarausad*, but the principle was clearly established in *Estelle*, long before *Briceno*. Consequently, this court must reject Respondent's suggestion that it disregard *Briceno* and *Garcia*.⁴²

---

³⁹ 558 U.S. ___, 129 S. Ct. 823 (2009).

⁴⁰ *Id.* at 832 n.5 (quoting *Estelle*, 502 U.S. at 67-68).

⁴¹ *Gammie*, 335 F.3d at 899.

⁴² The court does note that every California Court of Appeal decision since *Briceno* has agreed that *Briceno* and *Garcia* misinterpreted California law with respect to whether the crime must be committed in furtherance of some *other criminal activity*, and declined to follow them. Illustrative of this is the published decision in *People v. Vazquez*, 100 Cal. Rptr. 3d 351, 356-57 (Cal. App. 2009), *review denied*.

     In *Briceno, supra,* and *Garcia, supra,* the Ninth Circuit held that the specific intent requirement of section 186.22, subdivision (b) is not satisfied by evidence of a defendant's gang membership alone, and instead requires some evidence, aside from a gang expert's "generic testimony," that supports an inference that the defendant committed the crime "'with the specific intent to facilitate other criminal conduct by the [gang].'" (*Briceno, supra,* 555 F.3d at p. 1079, quoting *Garcia, supra,* 395 F.3d at p. 1103.) Among other things, according to the Ninth Circuit, the statute requires evidence describing "'what criminal activity of the gang was . . . intended to be furthered'" by the crime. (*Id.,* quoting *Garcia, supra,* at p. 1103.)

     While our Supreme Court has not yet reached this issue, numerous California courts of appeal have rejected the Ninth Circuit's reasoning. As our colleagues noted in *People v. Romero* (2006) 140 Cal.App.4th 15, 19, 43 Cal.Rptr.3d 862: "By its plain language, the statute requires a showing of specific intent to promote, further, or assist in '*any* criminal conduct by gang members,' rather than *other* criminal conduct. (§ 186.22, subd. (b)(1), italics added.)" Thus, if substantial evidence establishes that the defendant is a gang member who intended to commit the charged felony in association with other gang members, the jury may fairly infer that the defendant also intended for his crime to promote, further or assist criminal conduct by those gang members. (*Id.* at pp. 19-20, 43 Cal.Rptr.3d 862.)

     Like the *Romero* court, we reject the Ninth Circuit's attempt to write additional requirements into the statute. It provides an enhanced penalty where the defendant

(continued...)

In this case, unlike *Garcia*, there was expert testimony comparable to that in the *Gardeley*, the testimony of Detective Lee that the shooting demonstrated HNS's ruthlessness and diminished the respect due to MBC, a rival gang, that gang members will defend members of their families, and that gangs assault the families of members of rival gangs. From this evidence a rational jury could reasonably find that this promoted HNS's activities, which, in addition to homicides, drive-by shootings, and illegal possession of weapons, included narcotics sales and vehicle theft, by establishing its dominance and exclusivity within its "turf."[43] Thus, this case is distinguishable from *Garcia* and *Briceno*.

This court does, however, agree with Respondent that application of *Briceno* and *Garcia* to this case does not compel granting Lor relief. Given the distinguishing characteristics of the evidentiary basis in this case in comparison to *Garcia* and *Briceno*, unlike the Ninth Circuit in those two cases, this court cannot say that the decision of the California Court of Appeal in this case was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court

---

[42](...continued)
specifically intends to "promote, further, or assist in any criminal conduct by gang members." There is no statutory requirement that this "criminal conduct by gang members" be distinct from the charged offense, or that the evidence establish specific crimes the defendant intended to assist his fellow gang members in committing.

In each unreported decision in which review was sought, the California Supreme Court denied review.

[43] *See Gardeley*, 927 P.2d at 722; *see also Briceno*, 555 F.3d at 1081 (referring to protecting a gang "turf") (citing, *inter alia*, *People v. Villalobos*, 51 Cal. Rptr. 3d 678, 681 (Cal. App. 2007) (crime committed on gang turf); *People v. Romero*, 43 Cal. Rptr. 3d 862, 863-64 (Cal. App. 2006).

proceeding."[44] Nor can this court find that the California Court of Appeal unreasonably applied *Jackson* to the facts of Lor's case within the scope of *Andrade-Williams-Schriro*. Lor is not entitled to relief under his first ground.

Ground 2: Order to Pay Costs of Public Defender.

Lor contends that, because the trial court did not provide him with notice or an opportunity for a hearing before charging him with the responsibility of paying the costs of his public defender, he was denied due process of law. The California Court of Appeal agreed and remanded the matter to the trial court for further proceedings in accordance with California Penal Code § 987.8.[45] Respondent contends that the decision of the California Court of Appeal renders this issue moot. The court agrees. Federal courts lack jurisdiction to consider moot claims.[46] "If

---

[44] 28 U.S.C. § 2254(d).

[45] *Lor*, 2006 WL 915089 at *3-4. Cal. Pen. Code § 987.8 provides in relevant part:
(b) In any case in which a defendant is provided legal assistance, either through the public defender or private counsel appointed by the court, upon conclusion of the criminal proceedings in the trial court, or upon the withdrawal of the public defender or appointed private counsel, the court may, *after notice and a hearing,* make a determination of the present ability of the defendant to pay all or a portion of the cost thereof. . . . The court may, in its discretion, order the defendant to appear before a county officer designated by the court to make an inquiry into the ability of the defendant to pay all or a portion of the legal assistance provided.
\* \* \* \*
(f) Prior to the furnishing of counsel or legal assistance by the court, the court *shall give notice to the defendant that the court may, after a hearing*, make a determination of the present ability of the defendant to pay all or a portion of the cost of counsel. The court shall also give notice that, if the court determines that the defendant has the present ability, the court shall order him or her to pay all or a part of the cost. The notice shall inform the defendant that the order shall have the same force and effect as a judgment in a civil action and shall be subject to enforcement against the property of the defendant in the same manner as any other money judgment. (Emphasis added.)

[46] *See Church of Scientology v. United States,* 506 U.S. 9, 12 (1992).

there is no longer a possibility that [a party] can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction."[47] "The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted."[48]

In this case, the federal due process violation was the lack of notice and an opportunity to be heard. The California Court of Appeal, in remanding the matter to the trial court for further proceedings in compliance with the California statute, which clearly satisfies due process, granted Lor all the relief that this court could grant. Thus, there being no further effective relief this court may grant, this issue is moot, and the second ground must be dismissed for lack of jurisdiction.

V. CONCLUSION AND ORDER

Lor is not entitled to relief under either ground raised in the petition. Accordingly,

**IT IS ORDERED THAT** the Petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[49] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[50]

---

[47] *Ruvalcaba v. City of Los Angeles,* 167 F.3d 514, 521 (9th Cir. 1999).

[48] *Serena v. Mock,* 547 F.3d 1051, 1053 (9th Cir. 2008) (quoting *Feldman v. Bomar,* 518 F.3d 637, 642 (9th Cir. 2008)).

[49] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks and citations omitted).

[50] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court will please enter final judgment accordingly.

Dated: March 9, 2010.

/s/ JOHN W. SEDWICK
United States District Judge